UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re Application of<br>MULTIFLORA INTERNATIONAL LTD,<br>et al.,<br><br>Applicants. | Case No. 20-mc-80193-DMR<br><br>**ORDER ON APPLICATION TO CONDUCT DISCOVERY IN FOREIGN LITIGATION PURSUANT TO 28 U.S.C. § 1782**<br><br>Re: Dkt. No. 1 |

Applicants Multiflora International Ltd. ("Multiflora"), Agrícola Industrial Entre Ríos, S.A. ("Entre Ríos"), and Agrícola Esperanza Jacobi, S.A. ("Esperanza Jacobi") filed an application to conduct discovery in foreign proceedings pursuant to 28 U.S.C. § 1782. [Docket No. 1, Verified Ex Parte Application ("App.").] The motion is suitable for determination without oral argument pursuant to Civil L.R. 7-1(b).

Having considered the papers submitted and the relevant authorities, the court grants in part and denies in part Applicants' section 1782 application.

**I.     BACKGROUND**

**A.     Factual Background**

Multiflora is a British Virgin Islands company. Entre Ríos and Esperanza Jacobi are Guatemalan companies. App. at 3. All three entities are part of a Guatemalan corporate group that Applicants refer to as the "Multiflora Companies." *Id.* Multiflora is the majority owner of Esperanza Jacobi. *Id.* Christian, Olaf, and Allan Rasch are brothers and equal shareholders of Multiflora. *Id.* They are also indirect owners of Entre Ríos. *Id.*

The Multiflora Companies "focus on the production and export of agricultural products and the importation and selling of agricultural and agro-industrial machinery." App. at 3. Christian

1  Rasch has managed the Multiflora Companies for years. *Id.* at 4. Recently, Olaf and Allan Rasch
2  began requesting financial information about the Multiflora Companies from Christian Rasch. *Id.*
3  Christian Rasch refused to provide an accounting related to his administration of the Multiflora
4  Companies. *Id.* Olaf and Allan Rasch were eventually able to have an audit conducted. *Id.* The
5  audit revealed that, in October 2019, Christian Rasch had caused Esperanza Jacobi to sell a valuable
6  piece of real estate (the company's only asset) to a company that is solely controlled by Christian
7  Rasch. *Id.* Applicants assert that the price for the asset was "extremely undervalued." *Id.*
8  Additionally, in March 2020, Christian Rasch allegedly caused Entre Ríos to appoint an
9  administrator who then sold nine of the company's agricultural properties to another company
10 controlled by Christian Rasch. *Id.* These properties were also undervalued and there is "no evidence
11 of payment to Entre Ríos in consideration for the transfer of these nine properties." *Id.* In April
12 2020, Christian Rasch allegedly took corporate books, documents, and other information relating to
13 the Multiflora Companies without authorization. *Id.*

14 In April 2018, $250,000 was transferred from Multiflora's bank account to Caban Systems
15 ("Caban"), a U.S. company with a principal place of business in Burlingame, California. App. at 3.
16 In February 2019, there was another transfer from Multiflora to Caban in the amount of $100,000.
17 *Id.* Caban conducts business in energy storage systems. *Id.* Alexandra Rasch, Christian Rasch's
18 daughter, is the CEO and Secretary of Caban. *Id.* Applicants assert that there is "no legitimate
19 reason" for Multiflora to have transferred money to Caban. *Id.* at 5.

20 Upon discovering Christian Rasch's conduct in relation to the various transactions described
21 above, Olaf and Allan caused Applicants' legal representatives and directors to be replaced with
22 new management and initiated legal proceedings against Christian Rasch and the former
23 administrators. App. at 5. Those proceedings are taking place in Guatamala and include claims for
24 fraud, use of falsified documents, misappropriation, and criminal conspiracy. *Id.* at 2. Applicants
25 now seek to issue a subpoena to Caban that requests information about that corporation's
26 transactions with Christian Rasch. App., Ex. A, Subpoena.

27 **B.    Procedural History**

28 Applicants filed the current application on November 3, 2020. [Docket No. 1.] On

December 16, 2020, Applicants and Caban filed a stipulation requesting that the court refrain from taking action on the application while they attempted to reach an agreement without court intervention. [Docket No. 4.] The stipulation also provided that if an agreement could not be reached, Caban would file any objections or challenges to the application in the form of a motion to intervene and to quash, which would be filed no later than January 5, 2021. *Id.* at 3. The court granted the parties' stipulated request. [Docket No. 5.] The parties then requested several extensions of this deadline, which the court granted. *See* Docket Nos. 6, 8, 10. The final deadline for Caban to move to intervene and to quash was February 26, 2021. [Docket No. 10 at 3.] As of June 29, 2021, Caban has not filed any challenges to the application.

On March 9, 2021, Applicants notified the court that Caban had produced only 6 documents as a result of the parties' months-long negotiation and that the documents were insufficient to answer key questions about the transfer of funds from Multiflora to Caban. [Docket No. 12.] Specifically, Caban represented to Applicants that it had issued shares to Multiflora as consideration for the transfer of money. *Id.* at 2. However, Caban then said that it had cancelled those shares and instead issued them to a third company, Gaia Investment Holdings, Corp. ("Gaia"). *Id.* at 2-3. Applicants were able to determine that Gaia is controlled by Alexandra Rasch and two of her sisters, even though Caban assured Applicants that the recipient of the Caban shares was unrelated to Christian Rasch or his family. *Id.* at 3-4. Applicants assert that the 6 documents Caban produced do not explain, among other things, whether Caban ever received the transfer of money from Multiflora, whether Christian Rasch had authority to complete that transaction, and whether Gaia paid anything as consideration for the issuance of shares that was initially intended for Multiflora.

Because Applicants and Caban have failed to reach an agreement on this dispute, the court turns to the merits of the application.

**II.     DISCUSSION**

    **A.     Statutory Requirements**

Applicants seek discovery pursuant to 28 U.S.C. § 1782, which states as follows:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal,

3

> including criminal investigations conducted before formal accusation. The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court . . . . To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a). The purpose of section 1782 is "to provide federal-court assistance in the gathering of evidence for use in a foreign tribunal." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004); *see also Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 84 (2d Cir. 2004) (noting that section 1782 has the "twin aims" of "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts") (citation and quotations omitted). A district court is authorized to grant a section 1782 application where (1) the person from whom the discovery is sought resides or is found in the district of the district court to which the application is made, (2) the discovery is for use in a proceeding before a "foreign or international tribunal," and (3) the application is made by the foreign or international tribunal or "any interested person." 28 U.S.C. § 1782(a); *see also Intel*, 542 U.S. at 246-47; *In re Republic of Equador*, No. 10-mc-80255-CRB (EMC), 2010 WL 3702427, *2 (N.D. Cal. Sept. 15, 2010).

With respect to the first factor, "a business entity is 'found' in the judicial district where it is incorporated or headquartered." *Illumina Cambridge Ltd. v. Complete Genomics, Inc.*, No. 19-mc-80215-WHO (TSH), 2020 WL 820327, at *3 (N.D. Cal. Feb. 19, 2020). In this case, Caban is a Delaware corporation with its principal executive office in Burlingame, California.[1] Because Caban is headquartered in the Northern District of California, it is subject to section 1782 orders from this court.

Second, the requested discovery is for use in three Guatemalan lawsuits against Christian Rasch and other former administrators of Applicants, which are proceedings before a foreign tribunal. *See* App. at 5. In reviewing section 1782 applications, courts should "generally refrain" from determining whether the requested discovery will be admissible in the foreign proceedings. *In re Veiga*, 746 F. Supp. 2d 8, 18 (D.D.C. 2010); *see also Weber v. Finker*, 554 F.3d 1379, 1384-85

---

[1] The court takes judicial notice of Caban's registration with the California Secretary of State as well as its most recent Statement of Information.

4

(11th Cir. 2009) ("Section 1782 does not require that every documented discovered be actually used in the foreign proceeding."). Here, Applicants want information on allegedly fraudulent transactions completed by Christian Rasch when he managed the Multiflora Companies. Some of the transactions at issue include the transfers of money to Caban, which is controlled by Christian Rasch's daughter. The alleged transactions are directly relevant to Applicants' fraud and related claims against Christian Rasch and other former administrators. Thus, Applicants have adequately shown that the discovery they seek is for use in a foreign proceeding.

Third and finally, the application is made by plaintiffs in those lawsuits, who qualify as "interested persons" by virtue of being parties in the foreign proceeding. *Lancaster Factoring Co. Ltd. v. Mangone*, 90 F.3d 38 (2d Cir. 1996) ("The legislative history to § 1782 makes plain that 'interested person' includes 'a party to the foreign . . . litigation'.") (quoting Senate Report at 8, 1964 U.S.C.C.A.N. at 3789); *Intel*, 542 U.S. 241, 256 ("No doubt litigants are included among, and may the most common example of, the "interested person[s]" who may invoke § 1782 . . . .").

In sum, the court concludes that Applicants have satisfied the statutory requirements of section 1782. "However, simply because a court has the authority under § 1782 to grant an application does not mean that it is required to do so." *In re Republic of Equador*, 2010 WL 3702427, at *2 (citing *Intel*, 542 U.S. at 264). The court next considers whether the requested Subpoena should issue under the discretionary factors listed in *Intel*.

**B.**     ***Intel* Factors**

The Supreme Court has identified several discretionary factors that a court should take into consideration in ruling on a section 1782 request: (1) whether the "person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal court judicial assistance"; (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264-65.

With respect to the first discretionary factor, the Supreme Court has stated:

[W]hen the person from whom discovery is sought is a participant in the

> foreign proceeding . . . , the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad. A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence. In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid.

*Intel*, 542 U.S. at 264 (internal quotations and citations omitted). In this case, Caban is not a party to any of the proceedings in Guatemala. App. at 10. Because Caban is "beyond the jurisdiction of courts in Guatemala," discovery from that entity may be unobtainable without a discovery order under section 1782. *See id.* The first *Intel* factor therefore weighs in favor of issuing the subpoenas.

The second discretionary factor examines "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal court judicial assistance." *Intel*, 542 U.S. at 264-65. Applicants, two of which are Guatemalan companies, assert that assert that courts in Guatemala will be receptive to considering any evidence obtained through the current application. App. at 10. In absence of any evidence that Guatemalan courts would reject the judicial assistance of this court, this factor weighs in favor of granting the application. *See Super Vitaminas, S. A.*, No. 17-mc-80125-SVK, 2017 WL 5571037, at *3 (N.D. Cal. Nov. 20, 2017) (granting section 1782 application where "there is no evidence suggesting that Guatemalan courts would be unreceptive to the discovery [applicant] seeks").

The third *Intel* factor considers whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 264-65. Here, Applicants seek evidence from a third party that is beyond the jurisdictional reach of Guatemalan courts. App. at 10. The evidence is directly related to Applicants' claims for fraud against Christian Rasch and other former administrators. Thus, there is no evidence that Applicants are attempting to circumvent Guatemalan law or procedure. This factor weighs in favor of granting the application.

Fourth and finally, a court may consider whether a request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. Applicants' proposed subpoena is very broad. *See* App., Ex. A. For example, the subpoena requests "[a]ll financial, business, and property records of Caban

Systems," "[a]ll documents relating to the domestic or foreign bank accounts of Caban Systems," and "[a]ny and all documents or communications related to the outstanding balance of any loan received by any bank or third party." *Id.* at 9-10. Many of the requests do not reference Christian Rasch or Applicants at all. As written, the subpoena is overbroad and burdensome. However, Applicants and Caban previously reached an agreement on the appropriate scope of a subpoena. *See* Docket No. 10 at 2-3. Specifically, Caban agreed to produce:

1. Documents or information sufficient to identify the Caban shares initially issued to Multiflora and allegedly reissued to a third party;

2. Documents or information sufficient to identify the name, address, and contact information of the third party purportedly in possession of the aforementioned reissued shares;

3. Documents or information sufficient to show the transfer of funds from Multiflora's accounts to Caban's accounts;

4. Documents or information sufficient to show the amounts of any loans provided by Multiflora to Caban or to any individual or entity acting on Caban's behalf, the repayment of any such loans, and the bank accounts from which loan proceeds were disbursed and to which Caban repaid any such loans.

*Id.* at 2-3. The scope of that agreement is far narrower than the proposed subpoena and appropriately tailored to the issues for which Applicants seek information. The court will therefore direct the issuance of a subpoena that reflects the scope of information contained in the parties' agreement (with which Caban has allegedly not complied absent a court order). As narrowed, the requested discovery is not unduly intrusive or burdensome.

Finally, despite appearing in this case and stipulating to a deadline for filing a motion to intervene and to quash, Caban has not filed any challenge to Applicants' requested relief. Caban's silence on this matter further supports the reasonableness of granting the application.

### III. CONCLUSION

For the reasons described above, the court grants in part Applicants' ex parte application. Applicants may serve a subpoena that conforms with the narrowed scope identified above and in the parties' January 29, 2021 stipulation. Caban shall fully comply with the subpoena within 14 days of service.

1
2        **IT IS SO ORDERED.**
3    Dated: June 29, 2021
4    _____
5                                                              Judge Donna M. Ryu
                                                              United States Magistrate Judge
6
7
8
...
28

